UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZACHARY ROSENTHAL,

                    Petitioner,

    v.

WARDEN, WASHINGTON STATE
CORRECTIONS CENTER (SHELTON),

CASE NO. 3:26-cv-05000-BHS-BAT

**REPORT AND
RECOMMENDATION**

Petitioner seeks 28 U.S.C. § 2254 habeas relief from his convictions for three counts of vehicular Assault and one count of felony hit and run in Lewis County Superior Court case number 23-1-00295-21. Dkt. 1. For the reasons below, the Court recommends denying the habeas petition and **DISMISSING** this case with prejudice. If this recommendation is adopted, the Court recommends issuance of a certificate of appealability be **DENIED**.

## BACKGROUND

### A.    **Habeas Petition**

Petitioner originally raised ten grounds for habeas relief revolving around the claim he was denied his Sixth Amendment right to counsel during in his state criminal proceedings. Dkt. 1. After Respondent contended most of the federal habeas claims were unexhausted, Petitioner filed a "Notice" in which he stated: "Petitioner elects to proceed solely on the properly exhausted

REPORT AND RECOMMENDATION - 1

Sixth Amendment denial-of-counsel claim and voluntarily withdraws any unexhausted claims. Dkt. 13 at 1. The Court accordingly found the only habeas grounds for relief that were before the Court were: claim 5 ("Failure to Timely Appoint Counsel Structural Sixth Amendment Violation"); claim 6 ("Complete Denial of Counsel Structural Sixth Amendment Violation"); and claim 7 ("Failure to timely appoint counsel.") *See* Dkt. 14 (referring to habeas petition, Dkt. 1 at 6, 8, and 9).

Because Respondent acknowledges the habeas petition is timely and Petitioner's claim his Sixth Amendment right to counsel is exhausted, the state procedural history need not be recited.

**B.    State Court Findings**

Petitioner filed a direct appeal in the Washington Court of Appeals. In *State v. Rosenthal*, 34 Wn.App.2d 1016, 2025 WL 1043370 at * 1-3 (Wash. Div. II, April 8, 2025) the Washington Court of Appeals made the following findings of fact relevant to Petitioner's Sixth Amendment claims:

FACTS

Rosenthal caused a collision by veering his pickup truck into oncoming traffic and striking a car with three people in it. Rosenthal then fled the scene. Rosenthal was on methamphetamine at the time. The State charged Rosenthal by amended information with three counts of vehicular assault while under the influence and one count of felony hit and run.

A. Preliminary Proceedings

Rosenthal was appointed his first attorney at a preliminary hearing on May 30, 2023. The first attorney represented Rosenthal at his arraignment on an amended information on June 8, where Rosenthal attempted to raise a speedy arraignment objection, but his first attorney informed Rosenthal that there was no violation. Rosenthal's trial was set for the week of July 24.

REPORT AND RECOMMENDATION - 2

At an omnibus hearing on June 29, Rosenthal raised a conflict of interest issue relating to his first attorney. The trial court instructed Rosenthal to file a motion on the issue.

On July 6, Rosenthal filed a pro se motion for new counsel, claiming that the first attorney had testified against him in a prior bail jumping case. On July 13, at the hearing on Rosenthal's motion, the first attorney explained that he answered questions from the trial court in a prior case, and he stated that he had already spoken to all but one of the witnesses in Rosenthal's current case, discussed every aspect of the case with Rosenthal, and was ready to proceed to trial in Rosenthal's current case. At Rosenthal's insistence, the trial court directed the first attorney to withdraw and appointed Rosenthal new counsel. Rosenthal's second attorney was appointed the next day.

At a hearing on July 27, Rosenthal's second attorney informed the court that Rosenthal told him that "he would be claiming that someone else committed a particular crime." Verbatim Rep. of Proc. (VRP) (July 27, 2023) at 30. That other person was also the second attorney's client, which created a conflict of interest for the attorney. Accordingly, the second attorney asked to be allowed to withdraw from Rosenthal's case. Due to the conflict, the trial court allowed the second attorney to withdraw, which reset Rosenthal's time for trial under CrR 3.3 to expire on September 25, 2023, 60 days later.

At a hearing on August 2, Lewis County's defense coordinator explained to the trial court that Rosenthal had conflicts with all of the attorneys who had public defense contracts in Lewis County, so she was attempting to hire an attorney from outside that contracted attorney pool to represent Rosenthal. This attorney, Rosenthal's third, was on vacation at the time. Rosenthal orally moved to dismiss his case, but the court declined to consider this motion until Rosenthal had counsel assigned or formally decided to proceed as a self-represented litigant.

On August 3, the third attorney (trial counsel) accepted the appointment to represent Rosenthal but, due to still being out of town, could not appear until August 17. The public defense coordinator explained this situation to the trial court in a hearing on August 4. Rosenthal objected to the delay in appointing counsel and argued that the case should be dismissed. The trial court observed that the delay was primarily caused by conflicts of interest with the County's panel of attorneys and the fact that "[i]t takes time to find people outside our panel." 4 VRP (Aug. 4, 2023)

REPORT AND RECOMMENDATION - 3

at 48. On August 7, Rosenthal filed a pro se CrR 8.3(b) motion to dismiss his case for government misconduct due to the public defense coordinator's delay in appointing him counsel.

When Rosenthal's trial counsel appeared on August 17, the deadline for Rosenthal's CrR 3.3 time for trial was set to expire on September 25, 2023. The trial court tried to set trial for the week before that expiration date, but trial counsel had scheduling conflicts for much of September and observed that there were over 500 pages of discovery in the case. Rosenthal objected to waiving his right to a speedy trial. As a result of the tension between trial counsel's ability to perform effectively and Rosenthal's refusal to continue the trial date, trial counsel asked the court to hear Rosenthal's CrR 8.3(b) motion to help determine the outcome of the case because trial counsel did not believe that he could represent Rosenthal effectively at any trial set in September 2023. Rosenthal addressed the trial court directly to ask the court to dismiss his case due to the gap in representation between his second attorney and trial counsel.

B. CRR 8.3 Hearing

At the hearing on the CrR 8.3(b) motion to dismiss, Rosenthal's trial counsel presented Rosenthal's arguments. The motion was based on CrR 3.1, which requires a defendant to be represented at every stage of proceedings. Rosenthal argued that the fact he lacked assigned counsel from July 27 to August 3 constituted government mismanagement that required the dismissal of his case. Rosenthal also argued that his second attorney should not have been removed despite his conflict of interest, or that a "temporary attorney" should have been appointed until new permanent defense counsel could be assigned. 1 VRP (Aug. 22, 2023) at 22. And Rosenthal argued that he was prejudiced because his trial counsel could not effectively prepare for trial between his return from vacation and the expiration of Rosenthal's speedy trial right.

The State responded that Rosenthal was represented at every critical stage of proceedings and could not demonstrate any violation of rights, so the lack of an attorney for about eight days did not prejudice him. The State also emphasized that any error was due to the County's public defense program, not from misconduct by the State or trial court.

The trial court denied the CrR 8.3 motion in an oral ruling. The court agreed with the State that "there's nothing the State did on

this case to create whatever problems Mr. Rosenthal has." 1 VRP (Aug. 22, 2023) at 26. The court observed that Rosenthal's second attorney properly withdrew when he discovered a conflict of interest, which reset the CrR 3.3 time for trial time limit. And the trial court cited Rosenthal's other conflicts of interest for the difficulty in appointing new counsel:

With regard to the argument that there should have been some other attorney appointed. Well, that's the problem, Mr. Rosenthal, that you created in part by rejecting counsel who were ready, willing, and able. Because there's a limited number of people on this contract, and because of the criminal history that you have, everybody else has a conflict because of other people that are involved in this case, because either they represented you or represented potential victims or potential witnesses in this case. Everybody had a conflict.

So that's what was explained to me from the Public Defense Coordinator. And so they had to go outside the contract, and that's how [trial counsel] became involved with the case.

So at this point, now you have your third attorney on this case, and it's going to be up to you as to how you deal with this. But I'm not dismissing it based on this motion.

1 VRP (Aug. 22, 2023) at 27. Rosenthal then addressed the court, arguing that the second attorney should have been allowed to continue on his case. The trial court explained that allowing the second attorney to continue representing Rosenthal would have violated the Rules of Professional Conduct.

Trial counsel then asked the trial court to continue trial until October, over Rosenthal's objection, so that trial counsel had time to prepare. The trial court found good cause to grant a continuance:

Here's what I'm going to do, based on the fact that we have outside counsel not on the contract, that he was gone on vacation, that he was put behind and he couldn't start. If we force this trial and if you're convicted, it ends up being an automatic reversal in any effect.

I'm going to find good cause to continue this, noting your objection for the record, so it's clear. And I'm going to find good cause to continue this to the week of October 16th.

REPORT AND RECOMMENDATION - 5

1 VRP (Aug. 22, 2023) at 33. This ruling extended Rosenthal's time for trial deadline to November 11.

## DISCUSSION

The Court may grant federal habeas relief only if Petitioner shows the state court determination of his Sixth Amendment claims is contrary to or inconsistent with law clearly established by the United States Supreme Court, or the state court determination was based upon an unreasonable determination of facts. *See* 28 U.S.C. 2254(d)(1) and (2).

A state court's findings are 'contrary to' clearly established law if its determination is the opposite to that reached by the Supreme Court on a question of law or if the state court decision is different than a Supreme Court decision on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Clearly established federal law under 28 U.S.C. § 2254(d) is the Supreme Court's holding, not dicta, as of the time of the state court decision. *Williams*, 529 U.S. at 412; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004). Only binding Supreme Court holdings are grounds for habeas relief. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by *Lockyer v. Andrade*, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, this Court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, this Court may not issue grant habeas relief simply because the Court concludes, that its judgment the state court's decision applied clearly established federal law erroneously or incorrectly. *Id*. at 411. Rather, this Court may grant habeas relief only if the state court applied clearly established federal law in an "objectively unreasonable" manner. *Id*. at 409. This Court must also presume any determination

REPORT AND RECOMMENDATION - 6

of a factual issue made by a state court is correct unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner argues his Sixth Amendment right to counsel was violated, as a structural matter, by the delay in appointing counsel and this delay denied him counsel at critical stages of his proceedings. In specific, Petitioner claims the delay in appointing his third defense counsel denied him counsel for 23 days (July 27, 2023 through August 17, 2023) and during this time Petitioner moved to dismiss the case on speedy trial grounds, the appointment of counsel was discussed, Petitioner appeared at four hearings without counsel and was forced to draft his own CrR 8.3. motion alleging governmental mismanagement. Dkts 13 and 18.

Petitioner's claim he "was completely without counsel for 23 days following the removal of Mr. Blair" his first appointed lawyer. Dkt. 15 at 2 (Supplemental memorandum) is not supported by the record. The record shows the state trial judge granted Petitioner's request to replace Petitioner's first counsel on July 13, 2023, and advised Petitioner on July 14, 2023 his new lawyer was Mr. Clark. Dkt. 17 at ECF page 39-40, and page 69. On July 20, 2023, the Court set September 11, 2023 as the date of trial. *Id*. at 82. On July 27, 2023, the trial judge allowed Mr. Clark to withdraw because Petitioner told Mr. Clark "someone else committed a particular crime" and that someone else was Mr. Clark's "current client." *Id.* at 90.

The record shows that due to conflicts of interest, there were no lawyers under the Lewis County public defense contract who could represent Petitioner, and the public defense coordinator thus informed the trial judge on August 2, 2023 she had contacted a lawyer outside the contract to take appointment. *Id.* at 100-102. On August 3, 2023, outside counsel Mr. Kupka

REPORT AND RECOMMENDATION - 7

indicated[1] he would take the appointment, and on August 4, 2023, the trial court appointed attorney Kupka and was informed Mr. Kupka was unavailable[2] until August 17, 2023. *Id.* at 113-114. Petitioner objected on the grounds of government mismanagement and indicated he had already filed a motion to dismiss under CrR 8.3.[3]

On August 17, 2023, Mr. Kupka appeared and suggested the trial court first address Petitioner's CrR 8.3 motion alleging governmental mismanagement. If the motion was denied, Mr. Kupka indicated he would then request that trial be set in October so he would have sufficient time to prepare and provide effective assistance of counsel. *Id.* at 43-46. The trial judge adopted Mr. Kupka's suggestion and Mr. Kupka subsequently argued Petitioner's CrR 8.3 stating the crux of the motion is Petitioner did not have a lawyer from July 27, 2023 when Mr. Clark was allowed to withdraw to August 3, 2023, when Mr. Kupka was appointed, *id.* at 49-50, and Petitioner was prejudiced because due to the change in lawyers, he must now decide between his right to competent counsel and his right to a speedy trial. *Id.* at 53

The trial judge denied the motion stating "8.3 has to do with governmental misconduct. The State didn't do anything wrong," *id.* at 51; the trial judge further indicated he had earlier warned Petitioner that if he asked for appointment of a new attorney, the new appointment would reset the speedy trial clock. *Id.* at 54.

The record thus contradicts Petitioner's claim he was without a lawyer for 23 days. The record shows Petitioner was represented until July 27, 2023 when Petitioner's second lawyer,

---

[1] *See* Dkt. 18 at ECP page 50 ("I was assigned on August 3, 2023.").

[2] Mr. Kupka indicated he was on a family vacation when he was assigned on August 3, 2023. Dkt. 18 at 53.

[3] Washington Criminal Rule 8.3(c) states "(c) On Motion of Defendant for Pretrial Dismissal. The defendant may, prior to trial, move to dismiss a criminal charge due to insufficient evidence establishing a prima facie case of the crime charged."

REPORT AND RECOMMENDATION - 8

Mr. Clark, was permitted to withdraw. As Mr. Kupka stated he accepted the appointment to represent Petitioner on August 3, 2023, Petitioner was thus without counsel for the eight days it took the public defense coordinator to secure conflict-free counsel.

Petitioner's argument that habeas relief should be granted because he was without counsel for a certain number of days pretrial fails because not all violations of the Sixth Amendment right to counsel are structural errors requiring automatic reversal of a conviction. The Washington State Court of Appeals recognized this principle in affirming Petitioner's convictions. *See State v. Rosenthal*, 2025 WL 1043370 at * 4 ("not all pretrial hearings are critical stages" where the lack of counsel violates a defendant's constitutional rights.").

The Washington Court of Appeals found Petitioner was represented until July 27, 2023 when the trial court permitted Mr. Clark to withdraw due to a conflict of interest. *Id.* The state court further found that the hearings at which Petitioner appeared without counsel were:

> both perfunctory appearances where the public defense coordinator explained to the trial court the difficulties in finding non-conflicted counsel for Rosenthal and the reasons for trial counsel's delay in appearing. Therefore, even though Rosenthal attempted to present pro se motions to dismiss his case at these hearings and was rebuffed, these brief administrative hearings about the challenges of appointing Rosenthal counsel were not critical stages where the right to counsel attached. Because the hearings and the time between them were not a critical stage, Rosenthal's constitutional right to counsel was not violated by his lack of appointed counsel during this brief period.

*Id.* The Washington Court of Appeals also rejected Petitioner's contention that under *Betschart v. Oregon*, 103 F.4th 607, 614 (9th Cir. 2024), his Sixth Amendment rights were violated on the grounds that unlike the *Betschart* crises, "the delay in appointing Rosenthal counsel in this case was not because Lewis County lacked public defenders in the first place, but because Rosenthal had conflicts with them and the attorney outside of the county's pool of contracted attorneys was

REPORT AND RECOMMENDATION - 9

on vacation when contacted." *Id.* The Washington Court of Appeals further found Petitioner failed to show the eight-day delay in securing Mr. Kupka prejudiced Petitioner by violating his federal right to a speedy trial. The court found no speedy trial violation because the delay in securing Mr. Kupka was brief; the delay was caused by the conflicts of interest barring all public defense lawyers under contract from representing Petitioner; and even if Mr. Kupka had been appointed on July 28, 2023, Petitioner's trial would not have started earlier because Mr. Kupka was out on a family vacation, and also stated he could not be ready for trial during the month of September, 2023.

The Court finds the Washington Court of Appeals' findings are not contrary to or inconsistent with law clearly established by the United States Supreme Court, and not based upon an unreasonable determination of facts.

The record shows Petitioner had no appointed counsel for eight during a discrete stage of his pretrial proceedings. Because the impact of the lack of appointed counsel during this time period can be assessed, Petitioner must show he was prejudiced in order to grant relief. This is because the Supreme Court has held denial of counsel at a preliminary hearing stage is subject to harmless error review rather subject to automatic reversal. *Coleman v. Alabama*, 399 U.S. 1, 10–11 (1970). Thus, the Supreme Court has applied harmless error review regarding the admissibility of pre-trial evidence obtained by the government in violation of the right to counsel. *See, e.g., Satterwhite v. Texas*, 486 U.S. 249, 258 (1988) (denial of right to counsel at court-ordered psychiatric examination); *Milton v. Wainwright*, 407 U.S. 371, 372 (1972) (denial of right to counsel during post-indictment interactions with undercover police officer); *United States v. Wade*, 388 U.S. 218, 242 (1967) (denial of right to counsel at pre-trial line-up).

REPORT AND RECOMMENDATION - 10

The Supreme Court recognizes the complete denial of counsel at trial is a structural error that requires no showing of prejudice. *U.S. v. Cronic*, 466 U.S. 648, 659 (1984) citing *Davis v. Alaska*, 415 U.S. 308, 318 (1974) (denying counsel cross-examination is structural error). The Supreme Court in *Cronic* noted "apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic,* at 659, n. 26.

Applying the principles set forth in *Cronic,* the Supreme Court in *Bell v. Cone*, 535 U.S. 685, 695 (2002), discussed three situations in which structural Six Amendment error arises:

> First and '[m]ost obvious' was the 'complete denial of counsel.' A trial would be presumptively unfair, we said, where the accused is denied the presence of counsel at 'a critical stage .... Second, ... a similar presumption was warranted if 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.' ... Finally, ... where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected.

*Bell*, 535 U.S. at 695-96 (citations omitted).

The Supreme Court has also held there is no "per se rule requiring reversal of every conviction following tardy appointment of counsel." *Chambers v. Maroney,* 399 U.S. 42, 54 (1970) (Affirming conviction even though Defendant did not meet with counsel "until a few minutes before" the second trial began). *Id*. at 53.

Here, Petitioner fails to show the Washington Court of Appeals' determination regarding prejudice is contrary to Supreme Law or based upon an unreasonable determination of the facts.

Petitioner maintains the claim that federal habeas relief should be granted under *Betschart v. Oregon*, 103 F.4th 607 (9th Cir. 2024). *See* Dkt. 18. But as the Washington Court of Appeals recognized, the *Betschart* case involved the collapse of the Oregon Public Defense

REPORT AND RECOMMENDATION - 11

system resulting in criminal defendants being held in jail for months without ever being appointed counsel. *See Betschart v. Garrett,* 700 F.Supp.3d 965 (Dist. Or. 2023). The record does not show the Lewis County public defense system similarly collapsed or that Petitioner languished in jail without counsel for months like the criminal defendants in the *Betschart* decision. Petitioner thus fails to show the state court's affirmance of his convictions is contrary to clearly established law or the state court affirming decision differs from a Supreme Court decision on a set of materially indistinguishable facts.

Petitioner also suggests he was prejudiced because he had to file a *pro se* CrR 8.3 motion without counsel challenging the delays in obtaining conflict-free counsel. *See* Dkt. 15. Petitioner's suggestion lacks support. The trial judge scheduled a hearing on the CrR 8.3 motion at the suggestion of Petitioner's third defense lawyer, heard argument from defense counsel and the prosecuting attorney, and denied the motion on August 17, 2023. Petitioner does not show any prejudice accrued due to the time that passed between Mr. Kupka's appointment and the motion hearing date as, the trial judge in fact heard the motion, and denied the motion.

Petitioner also suggests he was denied his Washington State statutory right to a speedy trial. Dkt. 18 at ECF page 57. A violation of state law is not a basis for federal habeas relief. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (citations omitted).

Moreover, under Washington Criminal Rule 3.3(c)(9), the commencement of speedy trial is reset upon the disqualification of defense counsel, and the trial judge may extend the time for trial as required by the administration of justice under CrR 3.3(f)(2). Here, the disqualification of Petitioner's second lawyer due to a conflict on July 27, 2023 recommenced the start of the 60-day state speedy trial clock, requiring trial start on or by September 25, 2023. Petitioner's third

REPORT AND RECOMMENDATION - 12

defense counsel, Mr. Kupka, advised the trial judge "I could make myself effective if – with an additional two-week continuance, the week of October 9th or 16th. I could do my best. And I think good cause would exist [to extend speedy trial] without Mr. Rosenthal waiving his rights under CrR 3.3" Dkt. 17 at ECF p. 60. The trial judge agreed with Mr. Kupka, found good cause to extend the date of trial and set trial for the week of October 16, 2023. *Id*. at 61. October 11, 202, the trial judge conducted a bench trial based upon stipulated facts and found Petitioner guilty. Dkt. 17, ECF page 135-137. The record thus shows no federal violation of Petitioner's right to a speedy trial and no violation of Petitioner's state law rights. The Court accordingly finds Petitioner has failed to show the Washington Court of Appeals erred in finding the eight-day gap between Mr. Clark's withdrawal and Mr. Kupka's appointment did not violate Petitioner's constitutional right to a speedy trial.

In sum, Petitioner's argument the delay in securing counsel fails. His structural Sixth Amendment claim relies upon *Betschart* decision which is not binding Supreme Court law. Additionally, the *Betschart* decision addressed the complete collapse of the State of Oregon's public defense system, and there was no similar collapse in Petitioner's case. The Lewis County public defense system was functioning and provided Petitioner with three lawyers; the sole reason for the eight-day gap between Mr. Clark's withdrawal and Mr. Kupka's appointment was the number of conflicts all counsel under the Lewis County defense contract had with Petitioner. Petitioner thus fails to show the state courts affirmance of his convictions was contrary to or an unreasonably application of law that was clearly established by the Supreme Court.

As noted above, the Supreme Court has held to obtain habeas relief, Petitioner must show he was prejudiced. The three exceptions to this requirement do not apply here because (1) Petitioner was not denied counsel at trial; (2) Petitioner's right to cross-examine witnesses at trial

REPORT AND RECOMMENDATION - 13

was not denied; and (3) counsel was not appointed under circumstances in which no lawyer could provide effective representation.

Petitioner was without a lawyer during the eight days it took to secure conflict free counsel. He suggests he was prejudiced because he had to file his own CrR 8.3 motion. But the motion was heard and denied two weeks after Mr. Kupka accepted appointment because it was found lacking in merit. The two weeks it took to hear the motion does not establish constitutional prejudice.

The Court accordingly concludes federal habeas relief should be DENIED, and the case DISMISSED with prejudice.

## EVIDENTIARY HEARING

This matter may be resolved without an evidentiary hearing. As discussed above, the Court finds the state courts' rulings on the merits of Petitioner's claims was neither contrary to or an unreasonable application of clearly established Supreme Court law nor based upon an unreasonable determination of the facts given the record. The Washington Court of Appeals addressed the merits of Petitioner's claims and made findings of fact. Thus, the Court cannot conduct an evidentiary hearing to further develop the facts on petitioner's claims. *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitations of § 2254(d)(1) on the record that was before the state court.") (quotation marks and citation omitted).

Here, the Court concludes petitioner is not entitled to relief and the habeas claims may be resolved by review of the existing record without further discovery or supplementation of evidence presented for the first time; accordingly, no evidentiary hearing is required. *See also Kemp v. Ryan*, 638 F.3d 1245, 1269 (9th Cir. 2011) (when a habeas petitioner is not entitled

REPORT AND RECOMMENDATION - 14

to an evidentiary hearing, then the petitioner's request for discovery is futile, and the court does not abuse its discretion in denying it.).

## CERTIFICATE OF APPEALABILITY

As Petitioner seeks § 2254 habeas relief, he may appeal a district court's dismissal of the petition only after obtaining a certificate of appealability ("COA") from a district or circuit judge. The Court may issue a COA only if Petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A prisoner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Under this standard, the Court finds no reasonable jurist would disagree the state court's rulings as to Petitioner's claims are not contrary to or an unreasonable application of clearly established Supreme Court law nor based upon an unreasonable determination of the facts given the record. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order.  Therefore, Petitioner should not file a notice of appeal in the Court of Appeals for the Ninth Circuit until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **May 26, 2026.**  The Clerk shall note the matter for **May 29, 2026**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the

REPORT AND RECOMMENDATION - 15

Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.   The failure to timely object may affect the right to appeal.

DATED this 12th day of May, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16